Filed 5/5/26  Richins v. Ocasio CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| HEATHER RICHINS,<br><br>　　　Plaintiff and Respondent,<br><br>v.<br><br>JOSÉ OCASIO,<br><br>　　　Defendant and Appellant. | A173621<br><br>(Napa County<br>Super. Ct. No. 20FL000413) |

José Ocasio (Father) appeals from the trial court's order granting Heather Richins (Mother) sole custody of the parties' two minor daughters (Minors) in connection with Mother's desire to move out of state with Minors.[1]  We affirm.

BACKGROUND

In 2020, Mother filed a petition to establish a parental relationship.  After judgment, the court issued custody and visitation orders.  As relevant here, in 2023, an order issued providing the parties had joint legal and physical custody, with primary custody to Mother and weekly parenting time

---

[1] Father was represented by counsel below but appears in propria persona on appeal.

1

for Father on Tuesdays from 3:00 p.m. to 8:30 p.m.  The order afforded Father the opportunity to spend two days per month of "additional non-school parenting time" with seven days' notice to Mother, as well as specified holiday time with 36 hours' notice to Mother.  The written order included the following: "The Court has made numerous previous attempts at increasing Father's visitation time with the girls, but he has proven himself to be a rather unreliable caretaker . . . ."

In February 2025, Mother filed a request to change the 2023 custody and visitation order, seeking sole legal and physical custody to enable her to move to Arizona with Minors, then 11 and 12 years old.  Mother's supporting declaration averred that Mother had always been Minors' primary caregiver.  Although the 2023 custody order provided Father with the opportunity for additional weekly parenting time and holidays, he had not exercised that opportunity, had not participated in Minors' extracurricular activities, and had "regularly missed or canceled approximately half of the weekday visits."  Mother and Minors had been discussing moving out of California for a few years to seek a lower cost of living.  Mother has extended family in Arizona; Minors have friends living in Arizona; and the greater Phoenix area has better schools, better opportunities for extracurricular activities that Minors are engaged in, and better employment opportunities for Mother.  Mother proposed that she pay the travel expenses to bring Minors to California to visit Father for one week, twice per year, and that Father be afforded additional optional parenting time over certain weekends if he travels to Arizona.  Mother also proposed Minors have weekly phone calls with Father from Arizona.

Father opposed Mother's request and filed his own request to change the 2023 visitation order to add overnight visits and "transition[] to equal

time-share by summer 2025." Father submitted declarations averring that he had been a consistent parent to Minors, Mother was trying to undermine Minors' bond with Father, and Father's missed weekly visits were often because Mother requested to keep Minors during Father's designated time.

Minors' counsel filed a brief recommending the court find that granting Mother's request is in Minors' best interests. Minors' counsel reported that Minors stated they do not want to spend more time with Father and are "very much in favor of the move" because they like Arizona, are excited to reconnect with old friends there, will have their own rooms, and are looking forward to a new school and new gymnastics and dance programs. The brief discussed additional factors, including the distance, noting that it would be an approximately 11.5-hour drive and flights were available for under $100.

An April 2025 evidentiary hearing was held on both requests before a different bench officer than the one who issued the 2023 custody order. Both Mother and Father testified and Mother submitted communications between the parties into evidence. Father admitted he had not been to Minors' extracurricular activities or exercised holiday parenting time, claiming that his weekend work schedule prevented it. Father testified his work gave him paid time off but he had not taken any recently. Mother testified Minors sometimes had performances during the week, and there were also weekday holiday opportunities during Thanksgiving week or winter break that Father had never exercised. Mother testified that she did not yet have a job in Arizona because she needed court approval to move with Minors first. If granted approval to move, she hoped to leave after the school year ended.

Minors' counsel made a statement to the court, representing, "I've been on this case now several years and we've been back to court several times trying to tweak the schedule, give Dad more time, give Dad more

opportunities to be involved in the girls' life, and it's just not happening. When I originally came on the case, he still had his weekend [work] schedule, and I said is there any [way] you can change the schedule, because that's when you get quality time with the kids, on weekends. And there was, like, a rotation that he -- they could change [the] schedule, but it only happened every six months. And here we are, approximately three or four years later, and he still hasn't made the effort to change the work schedule to be more involved in the girls' life." Minors' counsel continued, "I don't doubt Father loves the kids, but instead of capitalizing on the opportunity to be more involved or work with the kids to understand their feelings, we get the complete opposite. He is actually giving away his time instead of utilizing time and extra days that he could have. [¶] So I support [Mother's] request to move away."

At the conclusion of the hearing, the court delivered a lengthy oral ruling granting Mother's move-away request after consideration of multiple factors. The court then discussed with the parties the specifics of Mother's proposed visitation and modified it in certain aspects to make it more favorable to Father: increasing the amount of time Minors would spend in California with Father from two to three weeks per year, increasing the phone calls from once to twice per week, and reducing the amount of notice Father needed to give Mother regarding modifications from 90 to 45 days. The court commented to Father, "I do believe that you love your girls, and I do believe that you want to spend time with them. I really am hopeful that with this new schedule that that time that you do spend with them will be really meaningful . . . ."

DISCUSSION

I.    *Mother's Move-Away Request*

Father raises various challenges to the court's order granting Mother's move-away request.  We reject them.

A.    *Legal Background*

"A parent entitled to the custody of a child has a right to change the residence of the child, subject to the power of the court to restrain a removal that would prejudice the rights or welfare of the child."  (Fam. Code, § 7501, subd. (a).)  Thus, when a custodial parent plans to move, "the noncustodial parent bears the initial burden of showing that the proposed relocation of the children's residence would cause detriment to the children, requiring a reevaluation of the children's custody.  The likely impact of the proposed move on the noncustodial parent's relationship with the children is a relevant factor in determining whether the move would cause detriment to the children and, when considered in light of all of the relevant factors, may be sufficient to justify a change in custody.  If the noncustodial parent makes such an initial showing of detriment, the court must perform the delicate and difficult task of determining whether a change in custody is in the best interests of the children."  (*In re Marriage of LaMusga* (2004) 32 Cal.4th 1072, 1078 (*LaMusga*).)  " 'In a "move-away" case, a change of custody is not justified simply because the custodial parent has chosen, for any sound good faith reason, to reside in a different location, but only if, as a result of relocation with that parent, the child will suffer detriment rendering it " 'essential or expedient for the welfare of the child that there be a change.' " ' "  (*Id.* at pp. 1088–1089.)

"Among the factors that the court ordinarily should consider when deciding whether to modify a custody order in light of the custodial parent's

5

proposal to change the residence of the child are the following: the children's interest in stability and continuity in the custodial arrangement; the distance of the move; the age of the children; the children's relationship with both parents; the relationship between the parents including, but not limited to, their ability to communicate and cooperate effectively and their willingness to put the interests of the children above their individual interests; the wishes of the children if they are mature enough for such an inquiry to be appropriate; the reasons for the proposed move; and the extent to which the parents currently are sharing custody." (*LaMusga*, *supra*, 32 Cal.4th at p. 1101.)

We review under " 'the deferential abuse of discretion test.' 'The precise measure is whether the trial court could have reasonably concluded that the order in question advanced the "best interest" of the child.' " (*LaMusga*, *supra*, 32 Cal.4th at p. 1087.)

B.    *Minors' Best Interests*

Father argues the trial court erroneously applied the standard for when one parent has sole custody, rather than the standard for when the parents have joint custody.[2] The 2023 order granted the parties joint physical custody with the notation, "Primary to Mother." "[C]ases . . . recognize that the term 'primary physical custody' has no legal meaning. Instead, the trial court looks at the existing de facto arrangement between

---

[2] " '[A] different analysis may be required when parents *share* joint physical custody of the minor children under an existing order and in fact, and one parent seeks to relocate with the minor children.' [Citation.] In such cases, if it is shown that the best interests of the children require modification or termination of the order, the court 'must determine de novo what arrangement for primary custody is in the best interest of the minor children.' " (*LaMusga*, *supra*, 32 Cal.4th at p. 1089, fn. 3.)

6

the parties to decide whether physical custody is truly joint or whether one parent has sole physical custody with visitation rights accorded the other parent." (*In re Marriage of Biallas* (1998) 65 Cal.App.4th 755, 759–760; see also Fam. Code, § 3004 [" 'Joint physical custody' means that each of the parents shall have significant periods of physical custody"].)  Thus, where "the father kept the child for one overnight every week and, on alternate long weekends, from Friday evening until Monday morning," courts have "characterized this arrangement not as joint physical custody but as an arrangement in which the mother had physical custody and the father had generous visitation rights." (*Marriage of Biallas*, at p. 760.)  In contrast, courts have found joint physical custody where "the father saw the child four or five times a week" or where "the children spent four days a week with one parent and three days with the other." (*Ibid.*)  Here, Father spent less than six hours per week with Minors.  The parties did not have joint custody for the purposes of the applicable standard.

Father next argues the trial court failed to consider the best interests factors identified by *LaMusga, supra*, 32 Cal.4th 1072.  "[I]t is a fundamental principle of appellate procedure that a trial court judgment is ordinarily presumed to be correct and the burden is on an appellant to demonstrate, on the basis of the record presented to the appellate court, that the trial court committed an error that justifies reversal of the judgment." (*Jameson v. Desta* (2018) 5 Cal.5th 594, 608–609 (*Jameson*).)  " 'In the absence of a contrary showing in the record, all presumptions in favor of the trial court's action will be made by the appellate court.' " (*Id.* at p. 609.)  Father points to no such contrary showing in the record.  Indeed, in the court's thorough oral ruling, it considered "the stability and continuity of [the] custody arrangement between the parents and their children," "the distance of the

7

proposed move," "the age of the children," "the relationship with the parents," "how the parents effectively communicate with each other regarding custody issues," "[t]he desire of the kids," "[t]he reason for the requested move," and how the "parents are sharing custody currently right now."

Father complains that the court focused excessively on his past visitation conduct. To be sure, "the superior court's function in determining custody is not to reward or punish the parents for their past conduct, but to determine what is in the best interests of the children. [Citation.] But this does not mean that the court may not consider the past conduct of the parents in determining what future arrangement will be best for the children. [Citations.] Clearly, the court must consider the past conduct of the parents in fashioning a custody order that serves the best interests of the children." (*LaMusga*, *supra*, 32 Cal.4th at p. 1094.) The court properly considered Father's past conduct in determining Minors' best interests.

Father contends Mother's reasons for moving were speculative as she had no job, housing, or school in Arizona. Mother reasonably explained that she was waiting for court approval before making any commitments. To the extent Father questions Mother's motivation for moving, substantial evidence supported the court's finding that Mother was "really looking for a better life with lower cost of living where she can provide that for the girls."

Father argues the absence of written findings precludes meaningful appellate review and requires reversal. As an initial matter, Father has not established that the absence of any reasoning would mandate reversal. (See *LaMusga*, *supra*, 32 Cal.4th at p. 1093 ["In future cases, courts would do well to state on the record that they have considered this interest in stability, but the lack of such a statement does not constitute error and does not indicate that the court failed to properly discharge its duties"]; *Jameson*, *supra*, 5

8

Cal.5th at pp. 608–609.) The sole authority relied on by Father, *In re Marriage of Campos* (2003) 108 Cal.App.4th 839, does not support his claim. (See *id.* at p. 842 [reversing because trial court "erroneously denied husband the opportunity to present evidence on the question of whether the move would cause detriment to the children"].) In any event, the trial court's oral ruling provides a clear record of its findings and reasoning.

Father argues the trial court modified custody "solely to enable relocation, not because the modification itself advanced the children's welfare." The trial court properly considered whether a custody change would be in Minors' best interests in light of Mother's plan to move. (*LaMusga*, *supra*, 32 Cal.4th at p. 1087 ["[T]he court must . . . consider 'the presumptive right of a custodial parent to change the residence of the minor children, so long as the removal would not be prejudicial to their rights or welfare. [Citation.] Accordingly, in considering all the circumstances affecting the "best interest" of minor children, it may consider any effects of such relocation on their rights or welfare.' "].)

Father argues the trial court erred in failing to make findings about Mother's willingness to foster Minors' relationship with Father or, relatedly, about Father's claim of parental alienation by Mother. The trial court's implied findings on these issues are supported by substantial evidence, and Father has not established that the court was required to make the findings expressly. (See *LaMusga*, *supra*, 32 Cal.4th at p. 1093.)

C.    *Improper Delegation*

The court's order provided, "Until Mother moves out of state, Father's visitation shall be as previously ordered on November 28, 2023. [¶] Commencing after the children move out of state . . ." will be the visitation schedule described above. Father argues that leaving the timing of this

9

visitation change to Mother's discretion constitutes an improper delegation of judicial authority. We disagree.

"The power to determine the right and extent of visitation by a noncustodial parent in a dependency case resides with the court and may not be delegated to nonjudicial officials or private parties." (*In re T.H.* (2010) 190 Cal.App.4th 1119, 1123.) Thus, "[s]everal appellate courts have overturned visitation orders that delegate discretion to determine whether visitation will occur, as opposed to simply the management of the details." (*Ibid.*)

The trial court here properly determined the right and extent of Father's visitation while Minors are living in Napa County and the right and extent of Father's visitation if and when Minors move out of state. Because Mother was waiting for court approval to move with Minors before making her plans, Mother did not have a set move date. The court properly determined which visitation schedule was in Minors' best interests while they were in Napa County, and which was in Minors' best interests after they moved to Arizona. (See *LaMusga, supra,* 32 Cal.4th at p. 1078 ["the superior court ordered that primary physical custody of two minor children would be transferred from their mother to their father if their mother moved to Ohio"].) No improper delegation occurred.[3]

D.    *Advance Notice*

With respect to Minors' visits with Father in California, the order provides, "Father must provide no less than forty-five (45) days advanced written notice . . . of intent to exercise this visitation, or else it will be

---

[3] We do not consider Father's arguments based on events taking place after the appealed-from order. (*In re Kenneth D.* (2024) 16 Cal.5th 1087, 1102 ["Ordinarily, appellate courts review a trial court's judgment based on the record as it existed when the trial court ruled"].)

10

canceled. . . . Mother shall pay the expenses for the children's travel to and from Napa County for these visits. If Father confirms visitation but cancels or does not show up, he shall reimburse Mother for this transportation expense . . . ."

Father complains that the order includes no similar provision for Mother's reimbursement of Father's travel expenses if he exercises his optional additional parenting time in Arizona during certain designated weekends. Father did not raise this issue in the trial court, despite detailed discussions between the court and the parties regarding various specifics of Mother's proposed order after the court announced its intention to permit the move-away request. He has therefore forfeited it. (*Avalos v. Perez* (2011) 196 Cal.App.4th 773, 776 (*Avalos*) ["As a general rule, a claim of error will be deemed to have been forfeited when a party fails to bring the error to the trial court's attention by timely motion or objection"].)

II. *Father's Increased Visitation Request*

Father argues the trial court failed to adjudicate Father's request to increase his visitation. Father has shown no reversible error.

As an initial matter, Father did not raise this issue at the hearing, despite the court asking at the conclusion, "Anything else that I'm missing or have not addressed?" The issue is thus forfeited. (*Avalos*, *supra*, 196 Cal.App.4th at p. 776.)

Even if the claim were preserved, we would reject it. The court knew of Father's request and expressly stated at the beginning of the hearing that it was considering the two requests simultaneously: "because these two requests are substantially related, my intention was to take evidence on both of them at the same time rather than split up the two requests for order." Indeed, the two requests were mutually exclusive: granting Father's request

11

would have necessarily meant denying Mother's request, and granting Mother's request necessarily meant denying Father's request. By granting Mother's request, the trial court impliedly found that Father's request was not in Minor's best interests. Father makes no showing that any technical error in failing to issue a formal ruling on Father's request was prejudicial.

## DISPOSITION

The order is affirmed. Mother is awarded her costs on appeal.

SIMONS, Acting P. J.

We concur.

BURNS, J.
CHOU, J.

(A173621)